UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey Rasawehr,                         Case No. 3:20-cv-00073

          Plaintiff,

v.                                     MEMORANDUM OPINION
                                         AND ORDER

Eric Belcher, et al,

          Defendants.

## I. INTRODUCTION

Before me is Defendant Eric Belcher's and Defendant Martin Ford's (collectively, "Defendants") motion for partial dismissal of Plaintiff Jeffrey Rasawehr's First Amended Complaint. (Doc. No. 39). Rasawehr filed a response in opposition, (Doc. No. 44), and Defendants replied. (Doc. No. 46).

## II. BACKGROUND

Jeffrey Rasawehr, Eric Belcher, and Martin Ford are members of Center Seeds, a limited liability company that, among other things, develops and sells custom-blended cover crops to farmers. (Doc. No. 34 at 14). Rasawehr owns approximately 44% of the company, while Belcher and Ford each own approximately 24%. (*Id.* at 14). Rasawehr founded Center Seeds in 2011 and hired Belcher and Ford in 2012. (*Id.* at 9). Belcher joined as the company's Chief Executive Officer, a position in which he continues to serve, and Ford came on as the Marketing Director. (*Id.*).

After operating this way for some time, Center Seeds terminated Rasawehr's employment in December 2018. (*Id.* at 29). Following his termination, Rasawehr filed the present suit against defendants Belcher and Ford as well as David Flack[1], alleging, among other things, that Belcher and Ford improperly froze him out of the company and are wasting the company's assets and have breached their fiduciary duties to both Rasawehr and the company.

Although Rasawehr's complaint contains eight counts, Belcher and Ford have moved to dismiss only three: (1) Rasawehr's claim for judicial dissolution of Center Seeds; (2) Rasawehr's claim that his termination was an act of retaliation in violation of Ohio's Whistleblower Statute; and (3) Rasawehr's claim that Belcher committed accounting malpractice.

### III.  STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to [the] plaintiff." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] On April 16, 2020, the claims against Flack were dismissed without prejudice after the parties jointly moved to dismiss them for the purpose of facilitating settlement. (Doc. No. 47). But on September 18, 2020, Flack filed a motion to intervene. This motion is still pending, but its resolution does not affect the issues discussed in this order.

662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

## IV. DISCUSSION

### A. Count III – Dissolution of Center Seeds

In Count III of his First Amended Complaint, Rasaswehr seeks to have this court "appoint a receiver to effectuate the dissolution of Center Seeds." (Doc. No. 34 at 35). Defendants argue this claim must be dismissed because Rasawehr has not joined Center Seeds as a party to the litigation. Although Defendants do not characterize their defense as a jurisdictional one, their argument raises issues relating to subject matter jurisdiction that must be examined. *See Williams v. United States*, 927 F.3d 427, 434 (6th Cir. 2019) (Federal courts have an independent obligation to raise and decide jurisdictional questions that the parties either overlook or elect not to press) (further citation omitted). This is because Rasawehr's dissolution claim relies on this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. For such diversity jurisdiction to exist, there must be complete diversity between the parties. *Evanston Ins. Co. v. Housing Authority of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017). Because a limited liability company has the citizenship of each of its members, *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009), whether Center Seeds is a party to the litigation may impact whether this court has jurisdiction over Rasawehr's dissolution claim. For this reason, the first question I must address is whether Center Seeds must be joined to this litigation at all.

#### 1. Joinder Analysis

Assessing joinder under Rule 19 is a three-step process. *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (further citation omitted).

> First, the court must determine whether the person or entity is a necessary party under Rule 19(a). Second, if the person or entity is a necessary party, the court must

then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction. Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable.

*Id.* (internal citations and quotations omitted).

    a. *Center Seeds is a necessary party*

Rule 19(a) provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). Center Seeds is a necessary party because it has an interest relating to the subject of the dissolution claim and disposing of the dissolution claim in Center Seeds' absence may, as a practical matter, impair or impede its ability to protect that interest.

Under Ohio law, an LLC exists as a separate legal entity apart from its members. *Disciplinary Counsel v. Kafele*, 843 N.E.2d 169, 173 (Ohio 2006). Thus, Center Seeds has an interest in the litigation – because its very existence is threatened by the relief Rasawehr seeks – that is different from the interests of its members. *See Tangshan Ganglu Iron & Steel Co., Ltd. v. Mapuche, LLC*, No. 14-61093-CIV, 2014 WL 2095167, at *2 (S.D. Fla. May 20, 2014) ("It is hard to imagine a case in which a limited-liability company would have a greater stake in the outcome"). Its ability to protect that interest would be impaired if it was not given an opportunity to present arguments against its dissolution in court.

4

> b. *Adding Center Seeds is not feasible*

Second, Center Seeds cannot feasibly be joined because adding it to the litigation would destroy complete diversity. As stated earlier, for the purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members. *Delay*, 585 F.3d at 1005. Because Rasawehr is a member of Center Seeds, his status as a citizen of Michigan would be imputed to Center Seeds, placing Michigan citizens on both sides of the litigation and destroying complete diversity between the parties. Therefore, joinder is not feasible.

Rasawehr attempts to find a way around this conclusion, arguing that even if Center Seeds was added to the litigation, it would be a nominal party. I address this argument here because federal courts must disregard the citizenship of nominal parties when determining whether diversity jurisdiction exists. *Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 42 (6th Cir. 1994). Thus, if Center Seeds could be a nominal party to this litigation, it would not impact the diversity analysis and its joinder would be feasible.

A nominal party is one that has no interest in the result of the litigation to which it is a party. *Mortenson Family Dental Center, Inc. v. Heartland Dental Care, Inc.*, 526 F. App'x 506, 508 (6th Cir. 2013). But unlike the case in *Mortenson*, where the LLC had no stake in the outcome because the dispute between its two members concerned whether one member's ownership interests were diluted by their failure to make a capital call, *id.* at 507, Center Seeds has a very real stake in the outcome of Rasawehr's dissolution claim. Center Seeds would cease to exist if Rasawehr's claim was successful.

Additionally, unlike the LLCs in the cases Rasawehr relies on, Center Seeds is comprised of members who are not presently before the court.[2] While district courts are split on the question of whether an LLC is necessary when all its members are before the court, *compare 4Brava, LLC v Sachs*,

---

[2] According to Rasawehr, there are three other individuals who own membership interests in the company. (Doc. No. 34 at 14).

No. 15-2744, 2018 WL 2254569, at *4 (D. Minn. May 17, 2018) *with Tangshan Ganglu Iron & Steel Co., Ltd.*, 2014 WL 2095167 at *2, Rasawehr identifies no support for the position that an LLC, facing possible dissolution, can be only a nominal party even though some of its members are absent from the litigation.

  c. *Center Seeds is an indispensable party*

"If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) provides four factors to guide this determination: (1) the extent to which a judgment rendered in that person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in that person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *Id.*

I begin with the first, the extent to which a judgment rendered in that person's absence might prejudice that person or the existing parties. Applying this factor involves examining whether any of the current parties to the litigation could adequately represent Center Seeds' interests. *See Glancy*, 373 F.3d at 670, 672.

Rasawehr argues Center Seeds would not be prejudiced by a ruling on the dissolution claim in its absence because all of the members of Center Seeds are or can be made parties to the present lawsuit. (Doc. No. 44 at 11). But even if this were true, it would not necessarily follow that the Center Seeds' members can adequately represent its interests.

Rasawehr's reliance on *Hooper v. Wolfe*, 396 F.3d 744 (6th Cir. 2005), is misplaced. In *Hooper*, the absent party was not an LLC but a limited partnership with only one general partner, a corporation which was a party to the case. *Id.* at 749-50. Because this general partner was the only

entity authorized to act on behalf of the limited partnership, the court reasoned the interests of the general partnership and limited partnership overlapped such that the general partner could adequately represent the limited partnership's interests.[3] *Id.*

By contrast, Center Seeds, as a legal entity separate from its members, has interests which differ from those of its individual members. While Ford and Belcher might also have some interest in Center Seeds' continued operation, it is not clear they could adequately represent this interest throughout the litigation. At the outset, Rasawehr himself alleges that individuals who collectively own a majority of Center Seeds' membership interests want Ford and Belcher removed from the company. From this alone it is clear that Center Seed's interests may be antagonistic to those held by Ford and Belcher in a way that was not the case in *Hooper*.

Further, consider a situation in which Rasawehr receives some of the other relief he seeks in this suit: what would happen if Rasawehr successfully proves his prior payment of $750,000 to Center Seeds was a loan for which Ford and Belcher are personally liable.[4] Would Ford and Belcher still want to operate the business, or would they consider bargaining Center Seeds' continued existence to escape liability? And how can this court be sure they would consider the interests of Center Seed's other members when making such a decision?

---

[3] *Hooper* was decided before 2008, when Ohio amended its law governing partnerships to recognize them as entities distinct from the partners they are comprised of. *See* O. R. C. § 1776.21; *Flynn Westfield Ins. Co.*, 858 N.E.2d 858, 862 (Ohio Ct. App. 2006) (reasoning, prior to 2008 amendments to statutory scheme, "[a] partnership is an aggregate of individuals and does not constitute a separate legal entity"). Thus, even setting aside the fact that case dealt with a limited partnership rather than a limited-liability company, any persuasive force *Hooper* might have is lessened by the fact that it may not come out the same way under Ohio's current law.

[4] Although Rasawehr alleges the funds were given to Center Seeds as a loan, he claims it is Ford and Belcher who are personally responsible for repayment. While he does not explain why these two would be personally liable for the loan, whether they would be or not is immaterial here. Even if Ford and Belcher were personally liable, a potential judgment in Rasawehr's favor would be enforceable against Ford and Belcher's assets, possibly including their membership interests in Center Seeds, which may influence their actions with respect to Center Seeds' continued operation.

None of the remaining factors support allowing Rasawehr's joinder claim to go forward either. Rasawehr does not show how any prejudice Center Seeds might suffer could be lessened or avoided. Even if all the individual members of Center Seeds could be added to this litigation, each might have interests that diverge from what would be best for the LLC as a whole.

As for whether a judgment rendered in the LLC's absence would be adequate, Rasawehr has not shown how any judgment I rendered could bind a non-party like Center Seeds. Unlike the situation in *Hooper*, where the limited partnership was "merely a marionette" for the general partnership, *Hooper*, 396 F.3d at 750, the LLC at issue here cannot be bound through an injunction that binds Ford or Belcher, particularly not when the two combined do not even represent a majority of Center Seeds. Finally, Rasawehr has an adequate remedy if his dissolution claim is dismissed for nonjoinder. Rasawehr can pursue his dissolution claim in state court.

In sum, Center Seeds is a necessary party because it has an interest in the handling of Rasawehr's dissolution claim. Adding Center Seeds to the litigation is not feasible because it would destroy complete diversity. Center Seeds is an indispensable party because I cannot determine, in equity and good conscience, that proceeding with the dissolution claim in Center Seeds' absence would be appropriate. Rasawehr's claim for dissolution is dismissed without prejudice. *See Carter v. Deutsche Bank Nat'l Trust Co.*, No. 16-4163, 2017 WL 4740570, *4 (6th Cir. 2017) (affirming dismissal without prejudice where plaintiff failed to join an indispensable party).

### B. Count VI – Retaliation

In Count VI of his First Amended Complaint, Rasawehr brings a claim for retaliation in violation of Ohio's Whistleblower Statute, O.R.C. § 4113.52. Defendants argue this claim must be dismissed because Rasawehr has not complied with the procedural steps necessary to invoke the Act's protection.

In paragraph 207 of his First Amended Complaint, Rasawehr alleges "[a]round October of 2018, Plaintiff filed complaints with the Ohio Department of Commerce and the U.S. Department of Justice on Defendants Belcher and Ford's fraudulent valuations of Center Seeds, subsequent sale of stock, and misleading of potential and actual investors of Center Seeds." (Doc. No. 34 at 38). Rasawehr then alleges his December 2018 termination was motivated by both: retaliation against Rasawehr for filing a complaint with the Department of Justice; and Rasawehr's decision to increase his own working hours at Center Seeds. (*Id.* at 39).

But even if Center Seeds did terminate Rasawehr's employment because he filed complaints with these public authorities, Rasawehr fails to state a claim under § 4113.52 because he has not complied with the statute's procedural requirements.

The Supreme Court of Ohio has identified specific procedures an employee must follow to gain statutory protection as a whistleblower under O.R.C. § 4113.52. *Contreras v. Ferro Corp.*, 652 N.E.2d 940, 943-44 (Ohio 1995) (holding that an employee who fails to follow the specific requirements is not a protected whistleblower). One of these procedures requires an employee to file a written report with a supervisor or other responsible officer prior to reporting the violation to public authorities. *Id.* at 944. This report must provide sufficient detail to identify and describe the specific violation the employee is reporting. *Id.*

Nowhere in his First Amended Complaint does Rasawehr allege that he filed a written report with Center Seeds personnel that describes the violations he reported to the Ohio Department of Commerce or the United States Department of Justice. Instead, Rasawehr attempts to rely on three exhibits he attaches to his response to Defendants' motion for partial dismissal.

The first is an email from Rasawehr to some of Center Seeds owners in which Rasawehr states "you still have broken federal law with my loan." (Doc. No. 44-4 at 2). Even if this qualified as a written report, it does not provide enough detail. The email says nothing of how Center Seeds'

9

treatment of the loan violated federal law, or even which federal law in particular Center Seeds violated. Given that § 4113.52(A)(1)(a)'s requirements are meant to give employers the opportunity to correct the violation, *Contreras*, 652 N.E.2d at 944, Rasawehr must do more than vaguely assert that Center Seeds has violated some federal law to satisfy the statute's requirement that employees file a written report with employers prior to notifying public authorities.

The second is another email. This one, according to Rasawehr, was sent by Defendants' counsel to Rasawehr's counsel. (Doc. No. 44 at 14). But this email fails to support Rasawehr's claim because it provides no facts from which to conclude Rasawehr filed any written report *prior to* filing a complaint with public authorities. Instead, the relevant portion of the email indicates only that Rasawehr "has filed a complaint with the SEC[5]." (Doc. No. 44-5 at 3). The email might provide more information about the violation Rasawehr is alleging[6], but it does nothing to support the conclusion that Rasawehr sent Center Seeds a written report detailing the violation he was alleging before he filed the complaints with public authorities.

Finally, Rasawehr relies on a signed declaration in which he asserts: "On numerous occasions, I have spoken with Eric Belcher and Martin Ford about their default on my loan to them, their misrepresentations of my loan to their parties, their handling of Center Seeds, and other wrongful acts I have alleged in my lawsuit against them." (Doc. No. 44-6 at 2). Rasawehr further

---

[5] Whether Rasawehr's complaint was filed with the Securities and Exchange Commission or instead, as he indicates elsewhere in his complaint, with the Department of Justice, is not material to the outcome of my analysis.

[6] A portion of the email reads: "It is a false statement to say that Eric refuses to pay him on his 'debt', or to say that Eric is siphoning profit from the company to benefit his family." (Doc. No. 44-5 at 3). This supports concluding that Rasawehr's complaint with the SEC has something to do with Rasawehr's claim that Belcher is wrongly refusing to pay Rasawehr some debt. It also supports the conclusion that Rasawehr's complaint is based on Belcher illegally siphoning funds from the company. But neither of these conclusions supports the inference that Rasawehr informed Center Seeds of his beliefs through a written report prior to filing a complaint with public authorities.

claims that he has verbally communicated to Mr. Belcher and Mr. Ford that he has reported them to the Securities and Exchange Commission and the Ohio Department of Commerce. (*Id.*). Again, Rasawehr's exhibit falls short of supporting a claim under § 4113.52 because there is no indication Rasawehr sent Center Seeds a *written* report at all, much less that he did so before filing his complaints with public authorities.

Because Rasawehr has not alleged facts to support the conclusion that he complied with the requirements for protection under O.R.C. § 4113.53(A)(1)(a), he has failed to state a claim for violation of the statute and Defendants are entitled to dismissal of this claim against them.

### C. Count VIII – Accounting Malpractice

In Count VIII of his First Amended Complaint, Rasawehr brings a claim for accounting malpractice against Belcher. (Doc. No. 34 at 40). Belcher contends this claim must be dismissed because Rasawehr fails to facts supporting the existence of any duty Belcher owed to Rasawehr.

Under Ohio law, an accountant's duty to prepare reports using generally accepted accounting principles extends to any third person to whom they understand the reports will be shown for business purposes. *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212, 214-15 (Ohio 1982). An accountant may be liable even if he does not initially owe a duty to another if he later assumes a duty by providing advice or professional services. *Aetna Cas. & Sur. Co. v. Leahy Const. Co., Inc.*, 22 F. Supp. 2d 695, 704 (N.D. Ohio 1998) (citing *Hall v. Gill*, 670 N.E.2d 503 (Ohio Ct. App. 1995)).

Belcher argues that he has no duty to Rasawehr because he was never Rasawehr's or Center Seeds' CPA and that he never performed any CPA duties while working for Center Seeds. (Doc. No. 46 at 7). Belcher also claims it was a different entity, Monnier & Company, CPAs, who completed the valuation of Center Seeds that Rasawehr takes issue with, and who also served as Center Seeds' accountant. (*Id.*). But Rasawehr's complaint presents a different characterization of

the relevant facts which, when taken as true, supports a reasonable inference that Belcher, as a CPA, performed some duties for Center Seeds which he understood Rasawehr would rely on for business purposes.

Rasawehr alleges Belcher is a licensed CPA in the state of Ohio. (Doc. No. 34 at 40). Rasawehr further alleges: "Belcher made numerous misrepresentations to owners, potential owners of Center Seeds, and third parties with respect to the value of Center Seeds, Center Seeds' finances, and the existence of [Rasawehr's] loan to the company." (*Id.*). Rasawehr also claims that Belcher, acting on behalf of Center Seeds, negotiated and executed a line of credit with Co-Bank in the amount of $1,250,000. (Doc. No. 34 at 17). Finally, Rasawehr argues that Belcher, in the course of proposing that he receive an increase in salary for the work he does as CEO of Center Seeds, listed "accounting." (Doc. No. 44 at 13; Doc. No. 44-3 at 2).

Rasawehr's allegations provide enough to support a reasonable inference that Belcher performed some accounting work, either for Center Seeds or for Rasawehr himself, for which Belcher owes a duty to anyone who Belcher understood would be shown the work he did for business purposes. The relationship between Rasawehr and Belcher supports a reasonable inference that Belcher would have understood that any accounting work he did involving Center Seeds or Rasawehr would eventually be shown to Rasawehr, and relied upon by him for business purposes. Because that is all that is needed for Rasawehr's claim to survive at this stage of the proceedings, Belcher's motion to dismiss is denied as to Rasawehr's accounting malpractice claim.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for partial dismissal is granted in part and denied in part. Specifically, Defendants' motion is granted as to Plaintiff's claims for dissolution of Center Seeds and retaliation in violation of Ohio law. Defendants' motion is denied as to Plaintiff's claim for accounting malpractice.

So Ordered.

                                        s/ Jeffrey J. Helmick
                                        United States District Judge